UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
(FILED ELECTRONICALLY)

CIVIL ACTION NO. _3:19-CV-784-CHB_____

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.

KATHERINE M. SMITH                                          DEFENDANTS
A/K/A KATHERINE MICHELLE SMITH
F/K/A KATHERINE M. BRADY
3259 Saint Marys Road
Lebanon, KY 40033

GEORGE A. SMITH
A/K/A GEORGE ANTHONY SMITH
221 Oak Street
Lebanon, KY 40033-1544

COMMONWEALTH OF KENTUCKY
SERVE: Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601-3449

KENTUCKY HOUSING CORPORATION
SERVE: Registered Agent Jeremy Ratliff
1231 Louisville Road
Frankfort, KY  40601

SPRING VIEW HOSPITAL
SERVE: Johnson & Catagno
300 W. Liberty Street, Suite 3
Louisville, KY 40202
Attorney for Judgment Creditor

CACH LLC
SERVE: Taylor Law PLLC
P.O. Box 436709
Louisville, KY 40253-6709
Attorney for Judgment Creditor

## COMPLAINT FOR FORECLOSURE

Plaintiff, the United States of America, states as follows:

1.     This is a mortgage foreclosure action brought by the United States of America on behalf of its agency, the United States Department of Agriculture Rural Housing Service also known as Rural Development (hereinafter collectively "RHS").

2.     Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial division, where the subject property is located.

3.     RHS is the holder of a promissory note ("the Note") executed for value on July 15, 1998 by Defendant **Katherine M. Smith, also known as Katherine Michelle Smith, and then known as Katherine M. Brady** ("the Borrower").  The initial principal amount of the Note was $64,660.00, bearing interest at the rate of 6.750 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

4.     The Note is secured by a Real Estate Mortgage (the "Mortgage") recorded on July 15, 1998, in Mortgage Book 171, Page 667, in the Office of the Clerk of Marion County, Kentucky.  Through the Mortgage, the Borrower, then unmarried, granted RHS a first mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 3259 Saint Marys Road, Lebanon, Marion County, Kentucky (the "Property") and described in more detail in the Mortgage.  A copy of the Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

5.     To receive subsidies on the loan, the Borrower signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the

2

Property, any subsidies granted to the Borrower by RHS.  A copy of the Subsidy Repayment

Agreement is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

6.      The Borrower has defaulted on the Note and Mortgage by failing to make

payments when due.

7.      RHS has, in accordance with the loan documents, accelerated the loan and

declared the entire principal balance, together with all accrued and unpaid interest and all other

sums due under the loan documents, to be due and payable.  Further, RHS sent notice to the

Borrower of the default and acceleration of the loan.

8.      In accordance with the loan documents, the United States is entitled to enforce the

Mortgage through this foreclosure action and to have the Property sold to pay all amounts due,

together with the costs and expenses of this action.

9.      The unpaid principal balance on the Note is $43,875.55 with accrued interest of

$7,545.94 through October 1, 2019, and $2,734.48 in subsidies, escrow of $861.40, late charges

of $65.24, and fees assessed of $3,304.72, for a total unpaid balance of $58,387.33 as of October

1, 2019.  Interest is accruing on the unpaid principal balance at the rate of $8.6798 per day after

October 1, 2019.

10.     The Property is indivisible and cannot be divided without materially impairing its

value and the value of RHS's lien thereon.

11.     Upon information and belief, in 2004, the Borrower married defendant **George A.**

**Smith**, also known as George Smith and George Anthony Smith.

12.     Defendant **George A. Smith, also known as George Smith and George**

**Anthony Smith,** may claim a spousal interest in the Property.  The interest of this Defendant, if

any, is inferior in rank and subordinate in priority to the first mortgage lien on the Property in

3

favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

13.     The Mortgage granted to RHS by the Borrower is a purchase money mortgage. The United States is unaware if the Borrower has a spouse, but even if such spouse existed, pursuant to KRS 392.040(1), any surviving spouse shall not have a spousal interest in land sold in good faith after marriage to satisfy an encumbrance created before marriage or to satisfy a lien for the purchase money.

14.     Defendant **Commonwealth of Kentucky** may claim an interest in the Property by virtue of a lien against the Borrower (then known as Katherine M. Brady) recorded on January 28, 2005 in Encumbrance Book 17, Page 385 in the Marion County Clerk's Office, a copy of which is attached as **Exhibit D**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

15.     Defendant **Kentucky Housing Corporation** may claim an interest in the Property by virtue of a Five-Year Mortgage from the Borrower recorded on February 4, 2015 in Mortgage Book 389, Page 418 in the Marion County Clerk's Office, a copy of which is attached as **Exhibit E**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

16.     Defendant **Commonwealth of Kentucky** may claim an interest in the Property by virtue of a Notice of Child Support Lien against George Smith recorded on December 13, 2008

in Encumbrance Book 21, Page 437 in the Marion County Clerk's Office, a copy of which is attached as **Exhibit F**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

17.     Defendant **Spring View Hospital** may claim an interest in the Property by virtue of a judgment lien against George Anthony Smith recorded on August 4, 2011 in Encumbrance Book 25, Page 7 in the Marion County Clerk's Office, a copy of which is attached as **Exhibit G**. The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

18.     Defendant **Spring View Hospital** may claim an interest in the Property by virtue of a judgment lien against George Anthony Smith recorded on November 14, 2011 in Encumbrance Book 25, Page 288 in the Marion County Clerk's Office, a copy of which is attached as **Exhibit H**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

19.     Defendant **CACH LLC** may claim an interest in the Property by virtue of a judgment lien against Katherine Smith recorded on June 12, 2015 in Encumbrance Book 29, Page 241 in the Marion County Clerk's Office, a copy of which is attached as **Exhibit I**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and

assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

20.     There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.     Judgment against the interests of the Borrower in the Property in the principal amount of $43,875.55, plus $7,545.94 in accrued interest as of October 1, 2019, $2,734.48 in unpaid subsidies, escrow of $861.40, late charges in the amount of $65.24 and fees assessed of $3,304.72, for a total unpaid balance due of $58,387.33 as of October 1, 2019, with interest accruing at the daily rate of $8.6798 from October 1, 2019, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

b.     That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c.     That the United States' lien be enforced and the Property be sold in accordance with 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.     That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.     That the Property be adjudged indivisible and be sold as a whole; and

      f.      That the United States receive any and all other lawful relief to which it may be entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney

s/ William F. Campbell
William F. Campbell
Katherine A. Bell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky  40202
Phone:  502/582-5911
Fax:    502/625-7110
bill.campbell@usdoj.gov
Katherine.bell@usdoj.gov

§JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

KATHERINE M. SMITH, ET AL.

**(b)**  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    MARION
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☑ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |      Med. Malpractice | ☐ 625 Drug Related Seizure |       28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |      Liability | ☐ 365 Personal Injury - |      of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |      Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|      & Enforcement of Judgment |      Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |      Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |       Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |      Liability |      Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|      Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** |      Safety/Health |  | ☐ 490 Cable/Sat TV |
|      (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |      Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
|      of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) |       Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle |      Property Damage |      Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |      Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) |       12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |      Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |      Injury |  |      & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☑ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment |      Sentence | ☐ 791 Empl. Ret. Inc. |      or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** |      Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |      Accommodations | ☐ 530 General |  |       26 USC 7609 |       Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other |  |  |       Under Equal Access |
|  |      Employment | ☐ 550 Civil Rights |  |  |       to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  |      Other |  |  |  |       State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |  |

## V.  ORIGIN   (Place an "X" in One Box Only)

☑ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       another district
       (specify)

☐ 6  Multidistrict
       Litigation

☐ 7  Appeal to District
       Judge from
       Magistrate
       Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. SECTION 1345

Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII.  REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
     UNDER F.R.C.P. 23

**DEMAND $**
$58,387.33

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☑ No

## VIII.  RELATED CASE(S)
IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE
10/30/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan **SECTION** 502

Loan No.

Date: **July 15**, **1998**

**3259 St Marys Road**
(Property Address)

**Lebanon**,     **Marion**,     **Kentucky**
(City or Town)        (County)        (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ **64,660.00** (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of **6.750** %.The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

[ ] I.  Principal and interest payments shall be temporarily deferred.  The interest accrued to _____ , \_\_\_\_\_ shall be added to the principal.  The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below.  I authorize the Government to enter the amount of such new principal here; $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

[x] II.  Payments shall not be deferred.  I agree to pay principal and interest in **396** installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **15th**day of each month beginning on **August 15**, **1998** and continuing for **395** months.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on **July 15**, **2031**, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ **407.97**. I will make my monthly payment at **the post office address noted on my billing statement**, or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose.  Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below.  I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

Exhibit A

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # ███████

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things.. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_____ Seal   _Katherine M. Brady_____ Seal
                    Borrower                                       Borrower

_____ Seal   _____ Seal
                    Borrower                                       Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

Account # ████████

3

171/6667





EXHIBIT
A

FILED
AT 2:11 P.M.
JUL 15 1998
MARION CO.

20.⁰⁰ pd

6667

*Space Above This Line For Recording Data*

Form RD 3550-14 KY
(11-96)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on **July 15**                     , **1998** . (Date)
The mortgagor is  **Katherine M. Brady, single**

("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| <u>Date of Instrument</u> | <u>Principal Amount</u> | <u>Maturity Date</u> |
|---|---|---|
| July 15, 1998 | $64,660.00 | July 15, 2031 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of **Marion**
, State of Kentucky

**\*\*\*See attached Exhibit A\*\*\***

which has the address of  **3259 St Marys Road**
                                                                                           (Street)
                                                                                                                                **Lebanon**
                                                                                                                                  (City)
Kentucky       (ZIP) **40033**       ("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Agriculture, Clearance Officer, STOP-7602, 1400 Independence Ave., SW, Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only.  You are not required to respond to this collection of information unless it displays a currently valid OMB number.*

Page 1 of 6

Exhibit B

668

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Page 2 of 6







669

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Refinancing. If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.
In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  Governing Law; Severability. This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15.  Borrower's Copy. Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16.  Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17.  Nondiscrimination. If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

18.  Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security

Page 4 of 6






671

Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. Uniform Federal Non-Judicial Foreclosure. If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or farmaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. Cross Collateralization. Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25. Release. Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

26. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

672

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_____ (SEAL)
Katherine M. Brady,     Borrower

_____ (SEAL)
                        Borrower

STATE OF KENTUCKY          }
COUNTY OF __Marion__       } ss :          ACKNOWLEDGMENT

Before me, __Jennifer C. Cash__ _____, a Notary Public in and for the County of __Marion__, personally appeared __Katherine M. Brady__ _____

_____ who acknowledged that __she__ executed the foregoing instrument on the __15th__ day of __July__ _____, __1998__ as __her__ free act and deed.

WITNESS my hand and official seal this __15th__ day of __July__ _____, __1998__.

[SEAL]

_____ Notary
                           Public

My commission expires __12/18/2001__

### PREPARER'S STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

__Spragens, Smith & Higdon, PSC__ _____        _____
(Name)                                        Frederick A. Higdon     (Signature)

__15 Court Square- Box 681, Lebanon, KY 40033 (502) 692-3161__
(Address)

### RECORDER'S CERTIFICATE

STATE OF KENTUCKY          }
COUNTY OF Marion           } ss :

I, __Eddie Lee__ _____, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the __15__ day of __July__ _____, __1998__ lodged for record __2:11__ at _____ o'clock __P__. M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office in mtg __BK 171 Pg. 669__

Given under my hand this __17__ day of __July__ _____, __1998__.

_____
Clerk of _____ County Court

_____ D.C.

Page 6 of 6








473

Description of Lot 1 of St. Mary Fields Subdivision of Higdon and Willett.

BEGINNING at an iron pin located in the South R/W line of Highway 84, approximately 3600 ft. East of the Intersection of Highway 84 and Highway 327 in St. Mary at a corner with Walter Leo Hamilton and Elizabeth Joyce Hamilton, D.B. 191, P. 221; Thence with the line of Hamilton for two calls, S21°-40'-03"W 200.00 ft. to an iron pin; S21°-40'-03"W 169.00 ft. to an iron pin; Thence, leaving the line of Hamilton, with new lines across Higdon & Willett, S65°-28'-42"E 79.50 ft. to an iron pin at a corner with Lot 2; with the West line of Lot No. 2, N22°-22'-17"E 169.97 ft. to an iron pin; N22°-22'-17"E 200.00 ft. to an iron pin in the South R/W line of Highway 84; Thence leaving Lot 2, with the South R/W line of Highway 84, N66°-16'-34"W 84.00 ft. to the BEGINNING. Containing 30,184 Square Feet per survey performed May 10, 1998, by L. S. Hardin, R.L.S. 527.

BEING the same property acquired by Katherine M. Brady, single, by Deed dated July 15, 1998, and recorded in Deed Book 200, Page 601, in the Marion County Clerk's office.

I:\DOCS\REALESTA\DESCRIPT\BRADEAT.FAH

Exhibit "A"

Form RHS 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

Account #: 

## SUBSIDY REPAYMENT AGREEMENT

1.   As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.   When I fail to occupy or transfer title to my home, recapture is due.  If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated.  If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full.  In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.   Market value at time of initial subsidy $ __64,000.00__  less amount of Rural Housing Service (RHS) loans $__64,660.00__  less amount of any prior liens $ _____ equals my/our original equity $__660.00__ .  This equals __-1.0__ % of the market value as determined by dividing original equity by the market value.

4.   If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans.  Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | Average interest rate paid | | | | | | |
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
|---|---|---|---|---|---|---|---|---|
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.   **Calculating Recapture**
Market value (at the time of transfer or abandonment)
LESS:
Prior liens
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements.
EQUALS
Appreciation Value. (If this is a positive value, continue.)
TIMES
Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
Value appreciation subject to recapture.  Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower | Date |
|---|---|
| *Katherine M. Brady* | July 15, 1998 |
| Borrower | Date |
| | |

*Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602.  Please DO NOT RETURN this form to this address.  Forward to the local USDA office only.  You are not required to respond to this collection of information unless it displays a currently valid OMB control number.*

Exhibit C

BOOK        PAGE
NOTICE OF RECOUPMENT LIEN        **EB17**        **3815**

LIEN NO. __030605__

COMMONWEALTH OF KENTUCKY
EDUCATION CABINET
EX REL DIVISION OF UNEMPLOYMENT INSURANCE

SOC. SEC. NO. __8358__
EFFECT. DATE __12-21-03__
CLAIM TYPE __UI__ L.O. __88__
ESTABLISHED OF DATE __08-13-04__

KATHERINE M BRADY
3259 ST. MARYS RD.

LEBANON        KY 40033

**FILED**
AT ____ **10:40AM**
**JAN 28 2005**
MARION COUNTY
EDDIE LEE COUNTY CLERK

┌─────────────────┐
│   **EXHIBIT**   │
│      **B**      │
└─────────────────┘

PURSUANT TO KRS 341.415 AND KRS 341.310, NOTICE IS HEREBY GIVEN THAT ____ KATHERINE M BRADY OF __MARION__ COUNTY, AN UNEMPLOYMENT CLAIMANT, IS INDEBTED TO COMMONWEALTH OF KENTUCKY, EX REL., DIVISION OF UNEMPLOYMENT INSURANCE FOR BENEFITS ERRONEOUSLY PAID INCLUDING INTEREST AND PENALTIES.

A LIEN ON ALL PROPERTIES OF SUCH CLAIMANT, CREATED BY KRS 341.415 IN FAVOR OF THE DIVISION OF EMPLOYMENT INSURANCE, EXISTS ON ACCOUNT OF SUCH INDEBTEDNESS.

KRS 341.415 PROVIDES THAT: IF THE BENEFITS PAID WERE THE RESULT OF A FALSE STATEMENT, MISREPRESENTATION, OR CONCEALMENT OF MATERIAL INFORMATION BY THE RECIPIENT, INTEREST AT THE RATE OF 1.5% PER MONTH OR ANY PART THEREOF MAY BE IMPOSED ON AND ADDED TO THE UNPAID BALANCE UNTIL THE OVERPAYMENT IS PAID IN FULL.

UPON REQUEST, THE DIVISION OF UNEMPLOYMENT INSURANCE WILL DISCLOSE THE SPECIFIC AMOUNT OF OVERPAID BENEFITS, INTEREST AND PENALTY TO ANY INTERESTED PARTY LEGALLY ENTITLED TO SUCH INFORMATION.  INQUIRY SHOULD BE MADE TO THE BENEFIT BRANCH TELEPHONE NUMBER (502) 564-2367.

THIS NOTICE OF LIEN HAS BEEN PREPARED AND EXECUTED BY THE UNDERSIGNED IN THE PERFORMANCE OF HIS OFFICIAL DUTIES IN THE ADMINISTRATION OF KRS CHAPTER 341

DIVISION OF UNEMPLOYMENT INSURANCE
BY ____
275 E. MAIN ST., FRANKFORT, KY. 40621

FILED THIS __28__ DAY OF __Jan__ 20__05__ AT __10:40 A__ M. IN
COUNTY COURT CLERK ____ E __Marion__ BOOK __17__ PAGE __3815__

INSTRUCTION TO THE COUNTY COURT CLERK: REQUEST IS HEREBY MADE TO RECORD THIS NOTICE OF LIEN IN ACCORDANCE WITH KRS 341.310. MAIL ONE COPY OF RECORDED NOTICE OF LIEN SHOWING BOOK & PAGE NUMBER WHERE LODGED, ALONG WITH LIEN SUMMARY REPORTS FOR PAYMENT OF RECORDING FEE, TO: CABINET FOR HUMAN RESOURCES BUILDING, DIVISION OF UNEMPLOYMENT INSURANCE, BENEFIT BRANCH, FRANKFORT, KENTUCKY 40621.

*Exhibit D*

EXHIBIT

C

MARION COUNTY
M389  PG418

FILED  $26

T ___ 1:24 pm ___

FEB 04 2015

MARION COUNTY
CHAD G. MATTINGLY, COUNTY CLERK

**KENTUCKY HOUSING CORPORATION
HARDEST HIT (HHF) FIVE-YEAR
MORTGAGE**

THIS REAL ESTATE MORTGAGE ("Mortgage"), entered into this 08 day of January 2015, by and between KATHERINE MICHELLE SMITH AKA KATHERINE M SMITH FKA KATHERINE M BRADY & GEORGE A SMITH ("Mortgagor," whether singular or plural), husband and wife, whose address is a 3259 Saint Marys Rd, Lebanon, Ky 40033  and KENTUCKY HOUSING CORPORATION, a de jure municipal corporation and political subdivision of the Commonwealth of Kentucky ("Mortgagee"), whose address is 1231 Louisville Road, Frankfort, Franklin County, Kentucky 40601.

## WITNESSETH:

WHEREAS, Mortgagor is indebted to Mortgagee for monies loaned or to be loaned to Mortgagor, as evidenced by a promissory note ("Note") of even date herewith with a principal sum up to a maximum of thirty thousand dollars ($30,000.00)  with interest thereon at the rate per annum provided in the Note, payable to the order of Mortgagee ("Obligations"). The maturity date of the Note is 01/08/2020.

WHEREAS, Mortgagor has received funds from Mortgagee for mortgage payment assistance through the Troubled Asset Relief Program ("TARP") funds committed to the Housing Finance Agency Innovation Fund for the Hardest Hit Housing Markets ("HHF").

NOW, THEREFORE, in order to secure payment of the Note or any renewal or extensions thereof, interest due thereon and all other obligations of Mortgagor as provided herein Mortgagor hereby grants and conveys and mortgages unto Mortgagee, with covenant of General Warranty, all of Mortgagor's right, title and interest in and to the real property situated in Marion County, Kentucky, as described on Exhibit A attached hereto and made a part hereof, together with all rents, profits, appurtenances and improvements thereunto belonging ("Property").

Mortgagor warrants that Mortgagor is lawfully seized of the estate hereby conveyed and has the full right and power to grant, convey and mortgage the same, and that the Property is free and clear of all encumbrances except: (i) the lien of all ad valorem taxes not yet due and payable; (ii) any and all applicable zoning rules and regulations affecting the Property; (iii) all easements, restrictions and stipulations of record affecting the Property, and (iv) any mortgages and/or liens of record which are prior and superior to this Mortgage, and which mortgages have been approved by Mortgagee.

Mortgagor covenants and agrees that until the Note has been fully paid and satisfied, Mortgagor will comply with the following conditions and covenants:

Insurance. Mortgagor will keep all improvements on the Property insured against loss or damage under a fire and extended coverage insurance policy issued by an insurance company or companies acceptable to Mortgagee, in such amount as Mortgagee may require or to the extent of the full insurable value of the improvements, making such policy payable under a standard mortgage clause to Mortgagee as its interests may appear. Should Mortgagor fail to obtain or to keep in force such insurance or to pay the premiums on any policies covering the Property, Mortgagee may obtain such insurance and pay the premium or pay any premiums which are due on such policies, and any sum so

Exhibit E

MARION COUNTY
**M389   PG419**

paid will be secured by this Mortgage and will be repaid by Mortgagor on demand, with interest until paid at a rate of twelve percent (12%) per annum. Mortgagor will deliver to Mortgagee not later than ten (10) days before the expiration of any such insurance policy, a renewal of such policy.

Taxes. Mortgagor will promptly pay all taxes, assessments, liens, judgments and charges now levied or hereafter levied against the Property, and should Mortgagor fail promptly to pay any such taxes, assessments, liens, judgments or charges, Mortgagee may pay such tax, assessment, lien, judgment or charge, and any sums so paid will be secured by this Mortgage and will be repaid by Mortgagor on demand, with interest until paid at a rate of twelve percent (12%) per annum.

Maintenance and Repair. Mortgagor will keep the improvements on the Property in good repair and condition and will not suffer waste thereto until the Note has been fully paid and performed, and will promptly repair or replace any of such improvements. Should Mortgagor fail to comply with this covenant, Mortgagee may cause such repairs or replacements to be effected and any cost so incurred will be secured by this Mortgage and will be repaid by Mortgagor on demand, with interest until paid at a rate of twelve percent (12%) per annum.

Prohibition on Transfer and Further Encumbrance. During the time that any of the Obligations secured by this Mortgage have not been satisfied or paid in full, any sale, transfer or voluntary encumbrance of all or any part of the Property herein conveyed, without the written consent of Mortgagee, will be deemed an event of default and Mortgagee shall have the option to declare, without notice, the entire indebtedness immediately due and payable and to proceed to enforce the lien securing it. Upon such sale or transfer of the Property by Mortgagor or any subsequent owner during the existence of the indebtedness hereby secured, Mortgagee, at Mortgagee's option, and as a condition for giving approval to such sale or transfer, will have the right to charge additional interest on the then unpaid balance due on the Note secured by this Mortgage in an amount equal to the average prevailing interest rate on first mortgages charged by lending institutions in the county where the Property is located.

Occupancy, Mortgagor's Loan Application. Mortgagor shall occupy, establish, and use the Property as Mortgagor's principal residence after the execution of this Mortgage and Mortgagor (or at least one Mortgagor, if initially more than one person are Mortgagors) shall continue to occupy the Property as Mortgagor's principal residence for the term of the Mortgage.

Mortgagor shall also be in default if Mortgagor, during the loan application process, gave materially false or inaccurate information or statements to Mortgagee (or failed to provide Mortgagee with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Mortgagor's occupancy of the Property as a principal residence.

Compliance with HHF Program Guidelines. Mortgagor must abide by all terms and conditions of Mortgagee's HHF Program ("HHF Program ") in order to be and remain eligible for assistance thereunder. The required terms and conditions are set forth on a separate Hardest Hit Fund Terms and Conditions  "Terms and Conditions") document which is issued concurrently to Mortgagor with the execution of this Mortgage. All of the terms, covenants, provisions, conditions, stipulations and agreements contained in the Terms and Conditions document are hereby made a part of this Mortgage, to the same extent and with the same force and effect as if they were fully set forth herein. Mortgagor covenants and agrees to perform the same or cause the same to be kept and performed, strictly in accordance with the terms and conditions thereof. If Mortgagor fails to abide by any of those terms and conditions, Mortgagor may be terminated from the HHF Program and the Note will become immediately due and payable.

MARION COUNTY
**M389  PG420**

**Events of Default and Remedies.** In the event Mortgagor (a) fails to pay any such tax, assessment, lien, judgment or charge, or pay any insurance premium within fifteen (15) days after the same becomes payable, or (b) fails within ten (10) days after notice of noncompliance of any other provision of this Mortgage to promptly cure such noncompliance, or (c) permits a suit to be instituted against Mortgagor for the enforcement of any lien or other encumbrance against the Property, or (d) becomes the subject of any voluntary or involuntary bankruptcy, receivership or other insolvency proceeding, or (e) fails to pay the Note or any installment thereof when due, or within any applicable grace period provided in the Note, or (f) fails to observe or perform any of the HHF Terms and Conditions, or (g) sells, transfers, or voluntarily encumbers all or any part of the Property without the written consent of Mortgagee, or (h) fails to occupy the Property as Mortgagor's principal residence, or (i) fails to observe or perform any of the other terms of the Note, or (j) gave materially false or inaccurate information or statements to Mortgagee during the loan application process (or failed to provide Mortgagee with any material information) in connection with the loan evidenced by the Note, then in any of such cases, an event of default will have occurred ("Event(s) of Default"). If an Event of Default occurs, Mortgagee may, without notice, declare all indebtedness hereby secured to be immediately due and may forthwith enforce the lien of this Mortgage; and in any such case, Mortgagee may forthwith enter on the Property, rent it out and collect and apply the rents and profits thereof first to the payment of a reasonable compensation to Mortgagee, including attorney's fees for its service enter on the Property, rent it out and collect and apply the rents and profits thereof first to the payment of a reasonable compensation to Mortgagee, including attorney's fees for its service and all costs of collection, and next to the satisfaction of the Obligations secured by this Mortgage, and such compensation and fees will become a part of the Obligations secured by this Mortgage.

**Defense of Lien.** If Mortgagee is required to appear in any court or tribunal to defend the title or possession of the Property, or the lien thereon, or to protect the Note or any of the other obligations secured hereby, Mortgagor or its successors in interest will pay all of the costs and expenses of such appearances, including a reasonable attorney's fee, and all such costs, expenses and attorney's fees will be part of the obligation secured hereby and will be paid by Mortgagor or its successors in interest on demand, with interest from the date such costs, expenses and attorneys fees are incurred, at a rate of twelve percent (12%) per annum.

**Appointment of Receiver.** In the event Mortgagee files an action to foreclose this Mortgage lien, Mortgagee will be entitled to the appointment of a receiver to take care of the Property, to collect the rents, issues and profits, to keep the Property in good repair and to apply the rents, issues and profits to the payment of the obligations secured hereby.

**Non-waiver of Default.** The failure or delay of Mortgagee to exercise any of its options herein provided due to any default in the payment or performance of any of the obligations secured hereby will not constitute a waiver of the right to exercise such option due to any subsequent default. Time shall be of the essence in the payment of any amounts due under the Note secured by this Mortgage and in the performance of Mortgagee's other obligations hereunder.

**Assignment of Note.** If Mortgagee assigns, endorses or otherwise transfers the Note, payment and performance of the obligations secured hereby will be made to and for the benefit of the holder of the Note, and the options, rights and remedies herein provided for Mortgagee may be exercised by such holder.

**Payment of Attorney's Fees.** If an Event of Default occurs, Mortgagor will pay all reasonable attorney's fees incurred by Mortgagee in enforcing this Mortgage.

MARION COUNTY
**M389   PG421**

Inspection. Mortgagee may make or cause to be made reasonable entries upon and inspections of the Property related to Mortgagee's interest in the Property, provided that Mortgagee shall give Mortgagor notice prior to any such inspection.

Waiver of Homestead. Mortgagor hereby waives all right of homestead exemption in the Property.

Future Advances: Line of Credit. In accordance with KRS 382.520, it is acknowledged and agreed that this Mortgage secures not only the initial advances under the Note or Notes evidencing part of the Obligations but also all future advances and all other additional indebtedness, whether direct, indirect, future, contingent, or otherwise, connected with or arising out of the Note or Mortgage. To the extent that the indebtedness evidenced by the Note or Notes evidencing part of the Obligations or any of the other obligations are deemed to be a "line of credit" pursuant to KRS 382.385, Mortgagor and Mortgagee intend that this Mortgage secure the line of credit, and the maximum credit limit of the line of credit which may be outstanding at any time or times and which is to be secured by this Mortgage is not more than thirty thousand dollars ($30,000.00). It shall be a default under this Mortgage if Mortgagor requests a release, in the manner provided by KRS 382.520 and/or KRS 382.385, of any portion of the lien securing the additional indebtedness or line of credit prior to the date that all of the Obligations have been paid and the Note or Mortgage have been terminated, and Mortgagor hereby waives any and all right to request such a release to the maximum extent permitted by law.

Should Mortgagor pay and perform all the obligations secured hereby, then this conveyance will be void, and in that event, Mortgagee will, at the request and cost of Mortgagor, release this Mortgage.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

MARION COUNTY
**M389  PG422**

IN TESTIMONY WHEREOF, witness the signature of Mortgagor as of the day and year first above written.

_Katherine N. Smith_ _____
Mortgagor's Signature

KATHERINE MICHELLE
SMITH AKA KATHERINE M
SMITH FKA KATHERINE M
BRADY
_____
Mortgagor's Printed Name

_George Smith_ _____
Co-Mortgagor's Signature

GEORGE A SMITH

_____
Co-Mortgagor's Printed Name

COMMONWEALTH OF KENTUCKY )
                                                            ) SS:
COUNTY OF _____Meade_____ )

The foregoing instrument was acknowledged before me this __8th__ day of __January__,
201_5_ by _Katherine Michelle Smith a/k/a Katherine M._, the Mortgagor(s) stated above.
                _Smith f/k/a Katherine M. Brady_
My commission expires: _____

EDGAR M. McGEE
Notary Public - State at Large
KENTUCKY - Notary ID # 475362
My Commission Expires December 23, 2018

_____
Notary Public

This Instrument Prepared By:

_M_ _(Brittany MacGregor)_
*Without examination of title or opinion
THIS INSTRUMENT PREPARED BY
McDRAYER, McGINNIS, LESLIE
& KIRKLAND, PLLC

201 EAST MAIN ST, STE. 900
LEXINGTON, KY 40607
(659) 231-8780

Page 5 of 6



12A517-1                                        0003847312
10/1996                                         DCLNPCFC
                                                200812090919001    EB 21
              NOTICE OF CHILD SUPPORT LIEN      State: W08         437

Notice is hereby given that delinquent child support obligations and
interest is owed by the following named obligor, which after demand for
payment thereof remains unpaid.

                                          FILED
GEORGE SMITH                        AT_____10:39AM
514 S SPAULDING AVE
LEBANON       KY 40033                   DEC 18 2008           QBC
                                        MARION COUNTY          5.00
                                    KAREN SPALDING, COUNTY CLERK   chg.
Pursuant to the provisions of Kentucky Revised Statutes 205.745,
131.130(11) and 134.420(2), a lien exists in favor of the Commonwealth
of Kentucky upon all interest in property, either real or personal,
tangible or intangible, acquired by taxpayer either prior to or
subsequent to the filing of the notice.

CASE NUMBER: 0003847312

DEBTOR IDENTIFICATION NUMBER:      -7944

              CLERK'S RECORD OF LIEN FILED

I certify this instrument was lodged in my office.  The fee provided by
KRS 64.012 is due and payable.

Book __21__ Page __437__ ___Karen Spalding___ County Clerk

Date __12-18-08__ Time __10:39 am__ ___Jennifer Cambridge__ Deputy Clerk

Locator No. _____ County of Record MARION

The amount of support obligation and interest constitutes the amount of
the lien.  The support obligation and accrued interest from the filing
date of the lien to date of payment is required before a lien release
can be authorized.  Upon request, the Department must disclose the
specific amount of the support obligation, and interest calculated to a
specific date to any interested party legally entitled to such
information.  Inquiries should be made to Division of Collections,
501 High Street, P. O. Box 491, Frankfort, Kentucky  40602 or phone
(502) 564-4921, Ext. No. 5366.

Division of Collections                    Date Prepared:  12/09/2008
Department of Revenue

------
------

Exhibit F



NO. 11-C-00092                                    MARION DISTRICT COURT

**NOTICE OF JUDGMENT LIEN ON REAL ESTATE**

<u>**JUDGMENT DEBTOR:**</u>                    <u>**JUDGMENT CREDITOR:**</u>

GEORGE ANTHONY SMITH                 SPRING VIEW HOSPITAL
3259 ST MARY RD          **FILED**
LEBANON, KY 40033 AT 8:51 AM.
XXX-XX-5040

AUG 0 4 2011                         JUDGMENT DATE:           6/6/2011
                                     JUDGMENT AMOUNT:          $997.06
MARION COUNTY                        PLUS 12% INTEREST
KAREN SPALDING, COUNTY CLERK         COURT COSTS TO DATE:
                                     ATTORNEY FEES:

<u>**NOTICE TO JUDGMENT DEBTOR:**</u>

YOU MAY BE ENTITLED TO AN EXEMPTION UNDER KRS 427.060, REPRINTED
BELOW.  IF YOU BELIEVE YOU ARE ENTITLED TO ASSERT AN EXEMPTION,
SEEK LEGAL ADVICE.
    Take notice that the Judgment Creditor herein has obtained
Judgment against the Judgment Debtor as set forth above and that
this Notice consititutes a lien upon all real estate in Marion
County in which said Judgment Debtor has any ownership interest.


**INSTRUCTIONS TO COUNTY CLERK:**

    Pursuant to KRS 426.720, you shall immediately enter this
Notice of Judgment Lien on Real Estate in the Lis Pendens Records
of Marion County.  Entry shall be noted upon the original of this
Notice, and a copy returned to Johnson & Castagno, Attorney, as
indicated below.

**KRS 427.060:**  In addition to any exemption of personal property, an
individual debtor's aggregate interest, not to exceed five thousand
dollars ($5,000.00) in value, in real or personal property that
such debtor or a dependent of such debtor uses as a permanent
residence in this state, or in a burial plot for such debtor or a
dependent or judgment, except to foreclose a mortgage given by the
owner of a homestead or for the purchase of money due thereon.
This exemption shall not apply if the debt or liability existed
prior to the purchase of the property or the erection of the
improvements thereon.

    I certify that on the 3rd day of August, 20 11, a
copy of this Notice of Judgment Lien on Real Estate, was hand-
delivered or sent to the last known address of the above Judgment
Debtor and to the Marion County Court Clerk by regular first-class
mail, postage pre-paid and that THIS INSTRUMENT WAS PREPARED BY:

                                     _____
                                     JOHNSON & CASTAGNO
                                     ATTORNEY FOR PLAINTIFF
                                     300 W. LIBERTY STREET, SUITE THREE
                                     LOUISVILLE, KY  40202
                                     502-561-2892

Exhibit 6



**EXHIBIT**

**F**

NO. 11-C-00141            MARION DISTRICT COURT

### NOTICE OF JUDGMENT LIEN ON REAL ESTATE

MARION COUNTY
E25  PG288

**JUDGMENT DEBTOR:**

GEORGE ANTHONY SMITH
3259 ST MARY RD
LEBANON, KY  40033
SS# XXX-XX-5040

**FILED**
AT 9:33 am
Dec 13.

NOV 14 2011

MARION COUNTY
KAREN SPALDING, COUNTY CLERK

**JUDGMENT CREDITOR:**

SPRING VIEW HOSPITAL

JUDGMENT DATE:      10/13/2011
JUDGMENT AMOUNT:     $1,720.50
PLUS 12% INTEREST
COURT COSTS TO DATE:
ATTORNEY FEES:

**NOTICE TO JUDGMENT DEBTOR:**

YOU MAY BE ENTITLED TO AN EXEMPTION UNDER KRS 427.060, REPRINTED
BELOW.  IF YOU BELIEVE YOU ARE ENTITLED TO ASSERT AN EXEMPTION,
SEEK LEGAL ADVICE.

     Take notice that the Judgment Creditor herein has obtained
Judgment against the Judgment Debtor as set forth above and that
this Notice consititutes a lien upon all real estate in Marion
County in which said Judgment Debtor has any ownership interest.

### INSTRUCTIONS TO COUNTY CLERK:

     Pursuant to KRS 426.720, you shall immediately enter this
Notice of Judgment Lien on Real Estate in the Lis Pendens Records
of Marion County.  Entry shall be noted upon the original of this
Notice, and a copy returned to Johnson & Castagno, Attorney, as
indicated below.

**KRS 427.060:**  In addition to any exemption of personal property, an
individual debtor's aggregate interest, not to exceed five thousand
dollars ($5,000.00) in value, in real or personal property that
such debtor or a dependent of such debtor uses as a permanent
residence in this state, or in a burial plot for such debtor or a
dependent or judgment, except to foreclose a mortgage given by the
owner of a homestead or for the purchase of money due thereon.
This exemption shall not apply if the debt or liability existed
prior to the purchase of the property or the erection of the
improvements thereon.

     I certify that on the _10_ day of _November_, 20_11_, a
copy of this Notice of Judgment Lien on Real Estate, was hand-
delivered or sent to the last known address of the above Judgment
Debtor and to the Marion County Court Clerk by regular first-class
mail, postage pre-paid and that THIS INSTRUMENT WAS PREPARED BY:

State of Kentucky, County of Marion, Sct. 1
KAREN SPALDING, Clerk of Marion County, do certify that
the foregoing _____ of _____, as, on the _14_ day
of _November_ at _9:33_ a. m, lodged in my
office for record, and that it has been duly recorded in my
in my said office. LPC Book _25_ Page _288_
Given under my hand this _16_ day of _Nov_ 11
KAREN SPALDING, Clerk
By _Camille Richerson_ D.C.

JOHNSON & CASTAGNO
ATTORNEY FOR PLAINTIFF
300 W. LIBERTY STREET, SUITE THREE
LOUISVILLE, KY  40202
502-561-2892

Exhibit H

**EXHIBIT**

G

FILED
AT 1:53 pm _____ pcs
JUN 1 2 2015   Rct 13"

NO. 15CI-00 MARION COUNTY
CHAD G. MATTINGLY, COUNTY CLERK

MARION CIRCUIT COURT
1 DIVISION

CACH, LLC
4340 South Monaco Street
2ⁿᵈ Floor
Denver, CO 80237

PLAINTIFF

vs.                    **NOTICE OF JUDGMENT LIEN**

KATHERINE SMITH                              DEFENDANT

* * * * * *

Take notice that the above referenced Plaintiff obtained a Judgment against the above referenced Defendant in the above Court, for the sum of $10,739.61 with interest accruing at the rate of 12.000% per annum from May 27, 2015, plus all costs expended, and as security for said Judgment levies on all of the right, title and interest of the Defendant, KATHERINE SMITH, in and to any real property located in MARION County, Kentucky.

**NOTICE**

**NOTICE TO JUDGMENT DEBTOR** You may be entitled to an exemption under KRS 427.060, reprinted below. If you believe you are entitled to assert an exemption, seek legal advice.

KRS 427.060: "In addition to any exemption of personal property, an individual debtor's aggregate interest, not to exceed $5,000.00 in value, in real or personal property that such debtor or a dependent of such debtor uses as a permanent residence in this state, or in a burial plot for such debtor or a dependent of such debtor is exempt from sale under execution, attachment or judgment, except to foreclose a mortgage given by the owner of a homestead or for purchase money due thereon. This exemption shall not apply if the debt or liability existed prior to the purchase of the property or the erection of the improvements thereon."

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was mailed on ___ JUN 1 0 2015 ___ to KATHERINE SMITH, at the last known address, in compliance with KRS 426.720(2).

ATTORNEY FOR THE PLAINTIFF                PREPARED BY:

*(signature)*                              *(signature)*

EMILY SALING                               EMILY SALING
TAYLOR LAW, PLLC                           TAYLOR LAW, PLLC
P.O. Box 436709                            P.O. Box 436709
Louisville, KY 40253-6709                  Louisville, KY 40253-6709
877-893-9166                               877-893-9166

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
120019874633 /29744/KYLIEN/JD

State of Kentucky, County of Marion, Sct. 1
CHAD G. MATTINGLY, Clerk of Marion County, do certify that
the foregoing ____ was on the ____ day
of ____ at ____ lodged in my
office for record, and that it has been duly recorded
in my said office ____ Book 29 Page 241
Witness my hand this 13 day of JUN 2015
MATTINGLY, Clerk
____ D.C.

Exhibit I